IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EILEEN M. ORTIZ,

       Plaintiff,

vs.                                                                          1:22-cv-00660-LF

MARTIN O'MALLEY,[1]
Commissioner of the
Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Eileen M. Ortiz's Motion to Reverse and Remand for a Rehearing (Doc. 19), which was fully briefed on June 23, 2023. *See* Doc. 29. The parties consented to my entering final judgment in this case. Docs. 3, 6, 10. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to account for a moderate limitation found in the opinions of two psychological consultants. I therefore GRANT Ms. Ortiz's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Martin O'Malley was confirmed as the Commissioner of Social Security on December 18, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is automatically substituted as the defendant in this suit.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.   Background and Procedural History

Eileen M. Ortiz is a 58-year-old woman with a bachelor's degree who lives in Las Vegas, New Mexico, with her mother and husband. AR 45, 63, 82, 270.[4] Ms. Ortiz has worked as a teacher and instructional assistant in elementary schools. AR 247–49. Ms. Ortiz filed an

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 14-1 through 14-9 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

application for Disability Insurance Benefits ("DIB") on June 14, 2018, alleging disability since March 30, 2015, due to anxiety, depression, fibromyalgia, chronic venous insufficiency, degenerative disc disease, chronic sciatic stenosis, neuropathy, PTSD, foot problems requiring a metal plate, and high blood pressure. AR 83. The Social Security Administration ("SSA") denied her claim initially and on reconsideration. AR 82–98; 101–20. Ms. Ortiz requested a hearing before an ALJ. AR 132–33. On July 27, 2021, ALJ Lillian Richter held a hearing. AR 38–76. ALJ Richter issued her partially unfavorable decision on November 24, 2021. AR 15.

The ALJ found that Ms. Ortiz met the insured status requirements of the Social Security Act through December 31, 2020. AR 18. At step one, the ALJ found that Ms. Ortiz had not engaged in substantial, gainful activity since October 2, 2017, her amended alleged onset date. AR 16, 18. At step two, the ALJ found that Ms. Ortiz's osteoarthritis of the lumbar spine, anxiety disorder, lumbar radiculopathy, major depressive disorder, cervicalgia, degenerative disc disease, somatic symptom disorder, post-traumatic stress disorder, peripheral edema, insomnia, and osteoarthritis of the first MTP joint were severe impairments. AR 18–19. At step three, the ALJ found that none of Ms. Ortiz's impairments, alone or in combination, met or medically equaled a Listing. AR 19–21. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Ortiz's RFC. AR 21–29. The ALJ found Ms. Ortiz had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally stoop, kneel, crouch, crawl, and balance; can occasionally push and pull with the bilateral lower extremities; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and should avoid exposure to unprotected heights and hazardous machinery. The claimant can perform simple, routine work. The claimant can have occasional interaction with supervisors, coworkers, and members of the public; and can remain on task for two hours at a time. The claimant can frequently handle, finger, and feel bilaterally.

AR 21.

At step four, the ALJ concluded that Ms. Ortiz was not capable of performing her past relevant work as a teacher. AR 29. At step five, the ALJ found that, prior to June 9, 2020, Ms. Ortiz was able to perform work that existed in sufficient numbers in the national economy, including work as a mail clerk, sorter, and folder. AR 30. The ALJ thus found Ms. Ortiz not disabled prior to June 9, 2020. AR 29–30. Because Ms. Ortiz was categorized as being of advanced age starting on June 9, 2020, the ALJ found her disabled after that date. AR 31.

Ms. Ortiz requested that the Appeals Council review the ALJ's partially unfavorable decision. AR 220–21. On July 15, 2022, the Appeals Council denied the request for review. AR 1–3. Ms. Ortiz timely filed her appeal to this Court on September 9, 2022. Doc. 1.[5]

## IV.   Ms. Ortiz's Claims

Ms. Ortiz raises three main arguments for reversing and remanding:

1. The ALJ erred by failing to properly explain how she considered the State Agency psychologists' findings, *see* Doc. 19 at 5–12;
2. The ALJ erred by failing to properly assess the opinions of consultative examiners Dr. Gzaskow and Dr. Steinman, *see id.* at 12–18;
3. The ALJ's RFC is not based on substantial evidence because she failed to properly account for Ms. Ortiz's subjective allegations of fibromyalgia, somatic symptom disorder, and other symptoms, *see id.* at 18–27.

I find that the ALJ failed to account for a moderate limitation found by the State Agency psychological consultants. I will not address the other issues raised by Ms. Ortiz because they may be affected by the Commissioner's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

## V.      Analysis

Although an ALJ need not *discuss* every piece of evidence, the ALJ must *consider* all relevant evidence, state how persuasive he or she finds each medical opinion and prior administrative medical finding, and explain how considerations of supportability and consistency led to this conclusion. *See* 20 C.F.R. §§ 404.1520b, 416.920b, 416.920c(b); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("It is the ALJ's duty to give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions."). This discussion must provide the Court with a "sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (quotation omitted). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted*); see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). These requirements apply not only to the ALJ's consideration of medical opinions by examining physicians, but also to prior administrative medical findings by non-examining consultants. *See* 20 C.F.R. § 416.920c(b); *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); *Ortiz v. Kijakazi*, No. 21cv1016 KK, 2023 WL 2538834, at *4 (D.N.M. Mar. 16, 2023) ("[T]he rules for weighing [prior administrative findings] are the same as for weighing medical

opinions.").

> **a.  The ALJ failed to account for a moderate mental limitation found by both psychological consultants in Section I of their MRFCAs.**

Two non-examining state agency consultants—Scott Walker, M.D. and Stephanie Crall, Ph.D.—completed Mental Residual Functional Capacity Assessments ("MRFCAs") based on Ms. Ortiz's medical records. AR 94–96, 116–18. The prior administrative findings contained in those assessments constituted part of the evidence upon which ALJ Richter relied in assessing Ms. Ortiz's RFC. AR 28. However, the ALJ makes no mention of a moderate limitation in Ms. Ortiz's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *See id.*, AR 95, 117. Because this limitation was found by both consultants but was not encapsulated by their narrative discussions of Ms. Ortiz's mental RFC, the ALJ's failure to account for this limitation is reversible error.[6]

Both Dr. Walker and Ms. Crall used a MRFCA form to assess Ms. Ortiz's mental RFC. AR 94–96; AR 116–118; Program Operation Manual System ("POMS") DI § 24510.060(A).[7] Two sections of this form are relevant here. Section I requires a consultant to "record preliminary conclusions about the effect of [a claimant's impairments] on each of four general areas of mental function." POMS § DI 24510.061(A). If a consultant finds that a claimant is moderately

---

[6] Ms. Ortiz also argues that the ALJ failed to account for a moderate limitation in her ability to maintain attention and concentration for extended periods. *See* Doc. 19 at 10–11; Doc. 28 at 3. Because the ALJ's failure to consider Ms. Ortiz's limited ability to complete a normal workday and workweek is sufficient grounds for remand, I do not consider this argument.

[7] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

limited in any area, "[t]he degree and extent of the capacity or limitation *must* be described in narrative format in Section III." POMS § DI 24510.063(B)(2) (emphasis added). Section III "is for recording the formal narrative mental RFC assessment and provides for [the consultant] to prepare a narrative statement for each of" those four areas of mental function. POMS § DI 24510.065(A). In short, Section I provides a "worksheet to ensure that [a consultant] has considered each . . . pertinent mental activit[y] and the claimant's . . . degree of limitation," POMS § DI 25020.010(B)(1), while Section III is used by medical consultants to record their "formal mental RFC assessment" and is assessed by adjudicators as such,[8] *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015).

However, "this does not mean than an ALJ can turn a blind eye to moderate Section I limitations." *Id.* The Honorable Stephan M. Vidmar, rejecting the argument that an ALJ is not required to consider Section I findings, thoroughly explained that the POMS, regulations, and caselaw require the ALJ to address all of a doctor's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–66 (D.N.M. 2016). An ALJ may rely exclusively on a Section III narrative only if it "adequately encapsulates" the moderate limitations found in Section I, *Carver*, 600 F. App'x at 619; that is, if Section III "does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental

---

[8] Mental Residual Functional Capacity Assessment ("MRFCA") forms are completed by psychological consultants through the SSA's Electronic Claims Analysis Tool (eCAT). Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and courts have continued to refer to the checkbox portion of each MRFCA as "Section I," and the "narrative" portions as "Section III." In addition, the instructions contained in POMS DI 24510.060–65 on how to complete SSA-4734-F4-SUP still apply to the eCAT version of the form.

RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[Section I] observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.").

In short, limitations found in Section I of an MRFCA are "evidence that the ALJ must consider in making . . . independent findings." *Silva*, 203 F. Supp. 3d. at 1159. When an ALJ does not clearly account for a Section I limitation, this Court must analyze whether the corresponding Section III narrative "adequately encapsulates" that limitation. *Carver*, 600 F. App'x at 619. If Section III does not adequately encapsulate the omitted limitation and the ALJ did not explain the omission, the ALJ has committed legal error requiring remand. *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 615 (10th Cir. 2019) ("If the agency had decided to omit particular limitations embodied in . . . medical opinions, the agency needed to explain the omissions.") (citing *Chapo*, 682 F.3d at 1291); *see also Jensen*, 436 F.3d at 1165 ("Failure to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (internal quotation marks and brackets omitted).

In Section I of their respective MRFCAs, Dr. Walker and Ms. Crall each found that Ms. Ortiz had moderate mental limitations that included a moderate limitation "in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods."[9] AR 95–96; 117–18. In the narrative explanation for each set of limitations, Dr. Walker

and Ms. Crall simply wrote "Depression Anxiety" or "Depression Anxiety PTSD."[10] *Id.* The

Court therefore views the consultants' additional explanations to function as their Section III

narratives. In this section, Dr. Walker wrote:

> The claimant retains the capacity to understand, remember, and carry out simple
> instructions, attend and concentrate sufficient to complete a routine work day
> without significant interruptions from psychologically-based symptoms; exercise
> reasonable judgment; interact appropriately with coworkers; [sic] supervisors and
> the general public on a superficial basis.

AR 96. In her Section III, Ms. Crall wrote:

> Claimant can independently perform multi-step tasks that require limited
> judgment. She will be unable to perform tasks involving multi-layer decision
> making or supervisory tasks. She can interact with others effectively, including
> the general public. She can adapt to a work environment with some changes in the
> environment.

AR 118.

> ALJ Richter considered both MRFCAs in a single paragraph:

> I have considered the opinions of State agency psychological consultants at the
> initial and reconsideration levels, finding the opinion at the initial level [Dr.
> Walker's] to be more persuasive than the later reconsideration opinion (Exhibits
> B2A; B5A). The medical evidence of record does not support more than mild
> adaption limitations.[11] As noted above, I do not find support in the opinion for
> limited judgment, which does not appear consistent with her ability to care for her
> elderly parents and her children. However, I do find the opinions of State agency
> psychological consultants consistent with medical evidence showing issues with
> anxiety and depression and some issues with concentration and memory (Exhibit
> B23F) and also the claimant's reports of daily activities at consultative

---

[9] I will henceforth refer to this limitation as a "moderate limitation in the ability to complete a
normal workday and workweek."

[10] Except for her additional explanation, Ms. Crall's MRFCA is identical to that produced by Dr.
Walker.

[11] A limitation in the ability to complete a normal workday or workweek is a "sustained
concentration and persistence limitation[]," not an adaptation limitation. *See, e.g.,* AR 95–96.

examination (Exhibit B24F) showing her typical daily activities consist of household chores, exercising, watching television, and reading, as well as function report noting she can pay bills (Exhibit B8E). These opinions also appear consistent with the observations of Dr. Gzaskow at Exhibit B8F noting that the claimant was cooperative and neatly dressed, and oriented with intact memory, recall and calculations. Additionally, these State agency psychological consultants have program experience, and their opinions are supported by review of and citations to the medical evidence of record.

AR 28.

The ALJ did not address the moderate limitation in Ms. Ortiz's ability to complete a normal workday and workweek, nor is this ability accounted for in the assessed RFC. *See* AR 21. This limitation also is not encapsulated in either Section III narrative. Regarding this limitation, Dr. Walker's Section III findings, which "opine that [Ms. Ortiz] *retained* the ability [to] 'attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms,' directly contradict" his Section I findings. *Saiz v. Kijakazi*, No. 22cv0742 DHU-KK, 2023 WL 5368889, at *11 (D.N.M. Aug. 22, 2023) (emphasis in original). Ms. Crall's Section III findings are simply silent on the relevant limitation. Because neither Section III narrative "adequately encapsulates" the Section I finding of moderate limitation in Ms. Ortiz's ability to complete a normal workday and workweek, and because the ALJ failed to account for this limitation, remand is required. *See Carver*, 600 F. App'x at 619; *see also Ortiz*, 2023 WL 2538834, at *9 (remanding for the same reason and noting that "with few exceptions, the weight of persuasive authority in this District supports reversing on this ground") (citations omitted).

The Commissioner, citing to four unpublished cases, argues that the Tenth Circuit and courts in this District have recently affirmed in comparable cases. Doc. 25 at 16–18. Three of these cases, discussed below, provide relevant but nonbinding authority; however, the caselaw

on these issues is fractured and these cases are "outliers" in their respective approaches.[12] *See Saiz*, 2023 WL 5368889, at \*8–9. The Court is unpersuaded by the reasoning in these cases and, having reviewed them, nonetheless concludes that the ALJ committed reversible error.

In *Fannin v. Comm'r, SSA*, 857 F. App'x 445 (10th Cir. 2021), the Tenth Circuit opined that a Section III narrative very similar to that provided by Dr. Walker was consistent with a moderate limitation in the claimant's ability to complete a normal workday and workweek.[13] *Id.* at 447–48. The consultant in that case concluded that the claimant "retain[ed] the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions [and] respond appropriately to changes in routine work setting." *Id.* at 448. The court, recharacterizing moderate limitations as "fair ability," found this conclusion consistent with the moderate limitations found in Section I. *Id.*

---

[12] In addition to the three cases discussed in the text above, the Commissioner cites to *Aragon v. Kijakazi*, No. 21cv0977 KK, 2023 WL 1990485, at \*11-12 (D.N.M. Feb. 14, 2023). *See* Doc. 25 at 17. *Aragon* involves subjective allegations rather than Section I findings and does not involve the moderate limitation at issue in this case. *See Aragon*, 2023 WL 1990485, at \*11–12; *Saiz*, 2023 WL 5368889, at \*8.

[13] The Commissioner cites *Fannin* for the proposition that comparisons of an ALJ's RFC analysis to Section I limitations "ask the wrong question," and should instead compare the analysis only to Section III narrative. Doc. 25 at 16–17 (quoting *Fannin*, 857 F. App'x at 447–48). However, as discussed in the text above, the court in *Fannin* only concluded that the ALJ's reliance on Section III was permissible after analyzing whether Section III was "consistent" with Section I. *Fannin*, 857 F. App'x at 448; *see also Saiz*, 2023 WL 5368889, at \*7. This substantially undermines the quotation of dicta from *Smith*, 821 F.3d 1264, rejected elsewhere in this opinion, and so undermines the Commissioner's characterization of *Fannin*. For her part, Ms. Ortiz argues that *Fannin* is not dispositive because it "pertains to harmless error where an ALJ relayed 'the narrative mental RFC found by the agency consultant' when addressing the vocational witness and 'that narrative mental RFC is consistent with the limitations found in the worksheet portion.'" Doc. 28 at 4 (quoting *Romero v. Kijakazi*, No. 21cv0249 KK, 2022 WL 1553295, at \*10 (D.N.M. May 17, 2022). Though this may be a valid basis to distinguish *Fannin*, the Court finds more substantial the reasons discussed in the text above.

The court's recharacterization of moderate limitations relies on a decontextualized reading of the word "fair" that is inconsistent with binding Tenth Circuit precedent and other language in SSA regulations. SSA regulations define mental limitations based on a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis" in a particular area. A mild limitation corresponds to "slightly limited" functioning; moderate corresponds to "fair" functioning; and marked corresponds to "seriously limited" functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.F.2. Thus, a claimant with moderate limitations is somewhere between slightly and seriously limited in that area. The court in *Fannin* "has taken the definition for 'moderate' . . . out of context—a moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208; *see also Saiz*, 23 WL 5368889, at *8 ("[A]spects of the court's rationale in *Fannin* [are] 'divergent' from its reasoning in other cases.") (citation omitted). Nor should we expect that a consultant would understand a moderate limitation as commensurate with no impairment: the POMS explicitly states that the box for "moderately limited" on a MRFCA form should be checked "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." *See* POMS DI § 24510.063(B)(2); *see also Saiz*, 2023 WL 5368889, at *6 ("[B]y assessing moderate limitations in Plaintiff's abilities to perform enumerated mental functions, the state agency consultants, at minimum, meant to indicate that these abilities were 'impaired.'"). A Section III narrative that, without articulated reasoning, includes no functional limitations in an area does not "adequately encapsulate" a Section I moderate limitation in that same area. *Carver*, 600 F. App'x at 619. In short, the Court is not persuaded by *Fannin* that the MRFCAs in this case adequately encapsulate, in Section III, the moderate limitation in Ms. Ortiz's ability to complete a normal workday and workweek found in Section I.

In *Leah P. v. Kijakazi*, No. 21cv0407 SCY, 2022 WL 3042928, at *5–6 (D.N.M. Aug. 2, 2022), the court, citing *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), held that an ALJ's RFC need only be compared to Section III findings, regardless of the content of Section I. This interpretation of *Smith*'s effect has been ably addressed by the Honorable Stephen M. Vidmar, s*ee Silva*, 203 F. Supp. 3d at 1158–66, and typically is rejected, implicitly or explicitly, in this district. *See, e.g., Mills v. Berryhill,* No. 16cv0573 CG, 2017 WL 3149414, at *10 (D.N.M. June 9, 2017); *Vienna v. Saul*, No. 18cv0783 LF, 2019 WL 4686718, at *4 (D.N.M. Sept. 26, 2019); *Thompson v. Kijakazi*, No. 20cv1020 JFR, 2022 WL 19387, at *7 (D.N.M. Jan. 3, 2022); *Kantor v. Kijakazi,* No. 21cv0717 KK, 2023 WL 2538786, at *5 (D.N.M. Mar. 16, 2023); *but see Rush v. Saul,* 389 F. Supp. 3d 957, 969 (D.N.M. 2019) ("*Smith* mandates affirmance here because the doctor's narrative RFC [found in Section III] and the ALJ's RFC are consistent."). Where Section III does not adequately encapsulate limitations found in Section I, the ALJ is required to specifically account for those limitations. *See Jensen*, 436 F.3d at 1165; *Haga*, 482 F.3d at 1208; *Parker v. Comm'r, SSA*, 772 F. App'x at 615 (10th Cir. 2019). *Smith* does not overrule this requirement. *See Silva*, 203 F. Supp. 3d at 1162–63 ("One panel of the circuit court cannot overrule another.") (citing *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005) and *United States v. Foster*, 104 F.3d 1228, 1229 (10th Cir. 1997)).

Finally, in *Padilla v. Berryhill*, No. 17-0329 GJF, 2018 WL 3830930, at *14–15 (D.N.M. Aug. 13, 2018), the court, again citing *Smith,* 821 F.3d at 1268–69, held that an ALJ can account for certain moderate mental limitations, including a limitation in the ability to complete a normal workday and workweek, by limiting a claimant to simple work and simple decision making. This holding dovetails with the Commissioner's otherwise unsupported argument that the Section I moderate limitations in this case are accounted for "in the ALJ's RFC assessment, which limited

Plaintiff to simple, routine work that required no more than occasional interaction with supervisors, coworkers, and the public." Doc. 25 at 18. I do not find *Padilla* persuasive, nor is it supported by other precedent or SSA regulations.

While it is true that an RFC that limits a claimant to simple, routine work may sometimes account for moderate non-exertional limitations, *see Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015), this limitation does not account for a moderate limitation in the ability to complete a normal workday and workweek. *See, e.g.*, *Ortiz*, 2023 WL 2538834, at *8–9; *Kantor*, 2023 WL 2538786, at *8; *Lucero v. Kijakazi*, No. 21cv0425 KK, 2022 WL 2315957, at *11 (D.N.M. June 28, 2022); *Fatheree v. Saul*, No. 19cv0704 JFR, 2020 WL 3448082, at *9–11 (D.N.M. June 24, 2020); *Duran v. Berryhill*, No. 18cv0734 SMV, 2019 WL 1992103, at *4 (D.N.M. May 6, 2019); *Vienna*, 2019 WL 4686718 at *7; *Saavedra v. Berryhill*, No. 16cv0822 LF, 2018 WL 324236, at *7 (D.N.M. Jan. 8, 2018); *but see Hite v. Saul*, 457 F. Supp. 3d 1175, 1193 (D.N.M. 2020). The ability to complete a normal workday and workweek is "critical for performing unskilled work . . . [and] necessary for performing any job," even a job that only entails simple, routine work. *Saiz*, 2023 WL 5368889, at *9 (citing POMS DI § 25020.010(B)(3)(e), (i) and POMS DI § 25020.010(B)(2)(a)). Thus, the ALJ's restriction here to simple, routine work that requires no more than occasional interaction with supervisors, coworkers, and the public does not account for Ms. Ortiz's moderate limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Remand is required.

## VI.    Conclusion

Having thoroughly reviewed the administrative record and the briefing of the parties, the Court concludes that the ALJ erred by failing to account for Ms. Ortiz's moderate limitation in her ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms. The Court remands so that the ALJ can account for this moderate limitation or explain why she rejects it. The Court does not reach Ms. Ortiz's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent